Filed 10/29/13  P. v. Olvera CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H038923 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. SS111858A) |
| v. | |
| ARIEL OLVERA, | |
| Defendant and Appellant. | |

## I. INTRODUCTION

The morning of March 27, 2011, Edgar Santana, a correctional officer, was offering inmates in a section of the Salinas Valley State Prison the opportunity to shower. Around 11:00 a.m., Santana approached the cell occupied by defendant Ariel Olvera and his cellmate. Defendant was serving a 13-year sentence following his May 2001 convictions by plea of carjacking (Pen. Code, § 215, subd. (a))[1] and assault (§ 245, subd. (b)) involving personal use of a semiautomatic firearm (§ 12022.53, subd. (b)). Defendant was dressed and wearing shoes when Santana asked if he wanted a shower. Since defendant wanted a shower, Santana handcuffed him and escorted him to the shower. At the shower room, Santana said there would be an unclothed body search and a cell search. When Santana requested his clothing, defendant removed and handed over his right shoe. On looking inside the shoe twice, Santana noticed a fragment of a hard

_____

[1] Unspecified section references are to the Penal Code.

plastic coffee cup sharpened to a point on one end with a handle on the other end made of cardboard and string. It was about five inches long and one inch wide. In Santana's experience, it was a dirk or dagger usable for stabbing. The point was tucked into the sole of the shoe. Defendant did not react when Santana removed the weapon and asked if it was his.

Defendant was charged with being a prisoner in possession of a dirk or dagger (§ 4502, subd. (a)) with two prior strike convictions (§ 1170.12). One charged strike, the assault conviction, was stricken at the prosecutor's request prior to trial. Defendant later agreed to a court trial on the conditions of a minimum restitution fine and a sentence of four years, the lower term doubled due to the remaining prior strike.

At the court trial, Officer Santana testified as summarized above. Defendant testified that the officer told him while he showered that he would be "going to the hole," meaning administrative segregation. According to defendant, the officer did not say he was conducting a search and did not pull a weapon out of defendant's shoe and ask him about it. Defendant stated he did not know why he was being punished until he saw a written lock-up order, and he had never seen the weapon before.

The trial court found defendant guilty as charged and sentenced him the same day to four years in prison consecutive to the term he was currently serving, and imposed a restitution fine of $240, as well as a court operations assessment of $30 and $40 as a court facilities fee.

Through counsel, defendant filed a notice of appeal on October 9, 2012. By letter dated May 21, 2013, this court notified defendant that his appointed appellate counsel filed a brief inviting us to identify any arguable appellate issues. On June 12, 2013, the court extended defendant's time to respond until July 22, 2013. We have received no written communication from defendant. Because the court imposed the "minimum" restitution fine in an incorrect amount, we will reduce the restitution fine to $200. As we find no arguable issue in reviewing the record, we will affirm the judgment as modified.

## II. STANDARD OF REVIEW

We review the entire record to determine whether appointed counsel has correctly determined that there are no arguable issues. (*People v. Wende* (1979) 25 Cal.3d 436, 441.) In performing our review, we are required to give a brief description of the facts, the procedural history, the crimes of which the defendant was convicted, and the punishment imposed, and to address any contentions personally raised by the defendant. (*People v. Kelly* (2006) 40 Cal.4th 106, 124.)

## III. TRIAL COURT PROCEEDINGS

In summarizing the trial court proceedings, we will not repeat the introduction's summary of the trial testimony, the convictions, the sentence, and some of the procedural history.

A complaint was filed on September 30, 2011. A preliminary hearing was held on February 23, 2012, following which an information was filed on March 2, 2012, charging defendant with being a prisoner in possession of a dirk or dagger (§ 4502, subd. (a)) with prior convictions of carjacking involving use of a firearm and assault with a semi-automatic firearm (§ 1170.12).

At a hearing on March 7, 2012, defendant waived his right to a speedy trial. Trial was scheduled for June 25, 2012.

At a closed hearing on May 2, 2012, defendant requested replacement of his appointed counsel pursuant to *People v. Marsden* (1970) 2 Cal.3d 118, and the trial court denied his request. We have reviewed the sealed transcript of that hearing.

At a hearing on June 6, 2012, the court granted the prosecution's motion to strike the assault strike, as it arose from the same occurrence as the carjacking conviction.

At a hearing on June 20, 2012, the court denied defendant's request for a continuance, and trial remained set for June 25, 2012.

On June 22, 2012, defendant filed a motion seeking a continuance so he could consult with the Mexican Consul General. At a hearing on June 25, 2012, the court found no good cause for a continuance and denied defendant's request. However, at a hearing on June 26, 2012, the court continued trial until September 5, 2012.

3

On August 20, 2012, defense counsel filed a request to continue trial due to a conflict with another scheduled trial in San Benito County. At a hearing on September 5, 2012, defendant agreed to a court trial on the conditions that, if convicted, his sentence would be limited to four years and the restitution fine would be the minimum. A court trial was scheduled for October 12, 2012.

At a hearing on September 19, 2012, trial was rescheduled for October 5, 2012, and trial was held on that date with the testimony as summarized above. After the trial court sustained the charges, defendant first asked to return for sentencing at a later date, but then changed his mind and asked for immediate sentencing. Defendant confirmed with the court that the sentence was "just for two years double, right? No life. Just two years double?" Defendant also asked if the "restitution starts once I'm done with my first term; right?" and was told that was not correct.

## IV. THE "MINIMUM" RESTITUTION FINE

The hearing on September 5, 2012, included the following discussion.

"[Defense counsel]: Judge, at this time, my client would be willing to waive his right to a jury trial on condition that, were he to be convicted, the sentence would be a maximum of lower term doubled for a total of four years. And the restitution fine would be as per normal custom with the plea; that is, $200.

"[Prosecutor]: That's correct.

"THE COURT: I think the minimum is 240.

"[Defense counsel]: Has it gone up to 240? All right. The minimum, which was 200, now 240.

"THE COURT: It is 240."

At sentencing on October 5, 2012, the prosecutor recited, "it would be, as the Court indicated, four years. It would be consecutive to any other sentence he's currently serving. As well, there would be no credits. And I believe the minimum fine is $240." Defense counsel "[a]greed on all counts." In imposing sentence, the court stated, "The Court will impose the $240 which is a minimum that I can impose on the restitution fine."

4

It is true that as of January 1, 2012, the minimum restitution fine for a felony conviction was increased to $240 (Stats. 2011, ch. 358, § 1, 2 West's Session Laws 2011, p. 3758) from the $200 it had been since a 1994 amendment of section 1202.4. (Stats. 1994, ch. 1106, § 3, p. 6548.) However, it would be an ex post facto violation to impose a minimum fine that was increased after the date of defendant's crime. (*People v. Souza* (2012) 54 Cal.4th 90, 143; *People v. Saelee* (1995) 35 Cal.App.4th 27, 30-31.) At the time defendant's crime was committed in 2011, the restitution fine minimum was $200.

It would not be an ex post facto violation if the trial court had exercised its discretion to impose a $240 fine ($40 over the $200 minimum) after weighing "any relevant factors, including, but not limited to, the defendant's inability to pay, the seriousness and gravity of the offense and the circumstances of its commission, any economic gain derived by the defendant as a result of the crime, the extent to which any other person suffered losses as a result of the crime, and the number of victims involved in the crime." (§ 1202.4, subd. (d).) The record here does not reflect such a decision by the trial court.

The parties agreed that the court would impose the minimum possible restitution fine and the court announced its intention to impose the "minimum" fine. Except for the apparent misunderstanding about the applicable minimum amount, it is clear that the court would have imposed the $200 minimum in effect as of the March 27, 2011 date of offense. The judgment should be so modified.

## V. DISPOSITION

The judgment is modified to reflect a restitution fine of $200. The trial court is directed to correct the abstract of judgment accordingly. As so modified, the judgment is affirmed.

_____

Grover, J.

**WE CONCUR:**

_____

Rushing, P.J.

_____

Márquez, J.